**CV 15**     **3791**

SLR:TH:TRP
F.# 2015V01678

FILED
CLERK

2015 JUN 29 PM 3:09

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

        Plaintiff,

      -against-

$80,369.52 HELD ON DEPOSIT IN
CITIBANK ACCOUNT NUMBER
9135609959 HELD IN THE
NAME OF JUSTEK USA CORP.; and

$15,781.16 HELD ON DEPOSIT IN
CITIBANK ACCOUNT NUMBER
9135073284 HELD IN THE
NAME OF JUSTEK USA CORP.,

        Defendants In Rem.
----------------------------------X

VERIFIED COMPLAINT
IN REM

Civil Case No.

MATSUMOTO, J.

LEVY, M.J.

      Plaintiff, the United States of America, by its attorneys, Kelly T. Currie, Acting United States Attorney for the Eastern District of New York and Tanisha R. Payne, Assistant United States Attorney, of counsel, alleges upon information and belief as follows:

## PRELIMINARY STATEMENT

      1.    This is a civil action in rem to forfeit and condemn to the use of the United States the above-captioned defendant funds (the "Defendant Funds"), in accordance with: a) 18 U.S.C. § 981(a)(1)(A), as property involved in a violation of 18 U.S.C. §§ 1956 or 1957, or property traceable to such property; b) 21 U.S.C. § 881(a)(6), as moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, or proceeds traceable to such an exchange, or as money

used or intended to be used to facilitate any violation of Title 21 of the United States Code, or property traceable thereto; and/or property involved in violations of 31 U.S.C. § 5324 and subject to forfeiture pursuant to 31 U.S.C. § 5317(c).

## JURISDICTION AND VENUE

2. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in the Eastern District of New York pursuant to 28 U.S.C. §§ 1355 and 1395.

## THE DEFENDANTS IN REM

4. The Defendant Funds consist of a total of $96,150.68, seized pursuant to seizure warrants issued on December 10, 2014 by the Honorable Mark Falk, United States Magistrate Judge, for the District of New Jersey. On or about December 10, 2014, agents of the United States Department of Homeland Security ("DHS") executed the seizure warrants and seized $80,369.52 from Citibank account number 9135609959 and $15,781.16 from Citibank account number 9135073284 (collectively, the "Seized Accounts"), which accounts are both held in the name of Justek USA Corp.

## STATUTORY BACKGROUND

5. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, which is involved in a transaction or attempted transaction in violation of federal money laundering laws, 18 U.S.C. §§ 1956 or 1957, and any property traceable thereto, is subject to forfeiture to the United States.

6. Pursuant to 21 U.S.C. § 881(a)(6), all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a

controlled substance in violation of Title 21 of the United States Code, and all proceeds traceable to such an exchange, and all money used or intended to be used to facilitate any violation of Title 21 of the United States Code, is subject to forfeiture to the United States.

7. The Currency and Foreign Transactions Reporting Act, 31 U.S.C. § 5313 et seq., also known as the Bank Secrecy Act (the "BSA"), imposes reporting requirements on virtually all transactions involving more than $10,000 in United States currency. Pursuant to 31 U.S.C. § 5313(a) and its related regulations, when a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of U.S. coins or currency ("cash") in an amount greater than $10,000, the institution is required to file a Currency Transaction Report ("CTR") for each cash transaction. CTRs are filed with the Financial Crimes Enforcement Network ("FinCEN") at the Detroit Data Center on forms that require, among other things, the identity of the individual who conducted the transaction and the individual or organization for whom the transaction was completed.

8. Pursuant to 31 U.S.C. § 5331 and related regulations, any trade or business that receives more than $10,000 in U.S. currency or money orders, in one or more related transactions, is required to collect personal identifying information from the customer, similar to that collected for CTRs, and must file that information on a form filed with the IRS. This form is commonly referred to as "form 8300." A wire transfer does not constitute "cash," and therefore does not trigger a form 8300 filing requirement.

9. Pursuant to 31 U.S.C. § 5324, it is a crime for an individual to (a) "cause or attempt to cause a domestic financial institution to fail to file a report required under § 5313(a)," (b) "cause or attempt to cause a domestic financial institution to file a report required under § 5313(a) . . . that contains a material omission or misstatement of fact," or (c) "structure or assist

in structuring, any transaction with one or more domestic financial institutions" for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a).

10. Pursuant to 31 U.S.C. § 5317, any property involved in a violation of 31 U.S.C. § 5324 or any conspiracy to commit any such violation, as well as any property traceable to any such violation or conspiracy, is forfeitable.

## FACTS

### The Black Market Peso Exchange

11. Narcotics traffickers amass large cash proceeds from the sale of narcotics in the United States. The traffickers or those associated with the traffickers, frequently attempt to give the impression of legitimacy to those proceeds; i.e., to "launder" them by making the proceeds appear to have been generated by a legitimate source. The traffickers must also devise various methods to remit those narcotics proceeds to suppliers of narcotics located in Colombia, Paraguay, and other South and Central American countries, which are known source locations of narcotics, without alerting governmental or law enforcement agencies in either country.

12. In order to accomplish this goal, narcotics traffickers frequently utilize domestic and foreign banks and/or financial institutions in order both to make their narcotics profits appear to be from legitimate sources and to move those profits through the financial system into the countries where narcotics are produced.

13. A popular method to launder narcotics proceeds is for narcotics traffickers, through a third party, to "sell" their narcotics proceeds in the United States for pesos in South American countries. This practice, commonly known as the Black Market Peso Exchange ("BMPE"), is centered on a BMPE broker who can bring the drug dollars and the legitimate pesos together.

14. In a common BMPE scheme, a BMPE broker identifies a South American businessperson who imports goods from places such as the United States, China, or Panama. The BMPE broker offers the South American businessperson an opportunity to pay the debt owed to the exporter in the foreign country at a significant discount compared to making the payment through a South American bank. The South American businessperson who agrees to this scheme then turns over the payment for the imported goods in the form of pesos to the BMPE broker, who in turn contacts a Drug Trafficking Organization ("DTO"). When the BMPE broker contacts the DTO, the broker offers the pesos in South America in exchange for the narcotics proceeds which are located in the United States. Similarly, in a form of trade-based money laundering, the goods themselves, or the proceeds of the sale of the goods, can be used as payment to the DTO in South America, either directly or through an intermediary.

15. The BMPE broker then arranges to have the narcotics proceeds picked up by a member of the BMPE broker's organization. These money pickups usually occur between two people who have never met before and will never meet again, and they frequently involve several hundred thousand dollars in narcotics proceeds.

16. Following the money pickup, the BMPE broker arranges to forward those funds to the exporter or retailer in the United States. This is frequently accomplished by depositing the narcotics proceeds, still in the form of currency, directly into accounts held by the exporter or retailer. Frequently, these deposits are conducted not by the business owners but by money couriers involved in the laundering process, who are given instructions to make deposits in amounts no greater than $10,000 to avoid the CTR reporting requirement discussed below. Exporters or retailers who accept funds in this manner are a key part of the laundering process. Because many of these exporters and retailers operate cash-intensive and/or high volume

businesses, the commingling of the narcotics proceeds with the proceeds of the business serves to conceal the illicit activity.

17. The deposits are often made by multiple couriers in the various different geographical locations where the narcotics dollars happen to be located. Cash deposits made in geographically diverse locations, especially locations where neither the business nor its customers are located, are therefore a strong indication that the accounts are being used to launder proceeds through the BMPE.

18. In an effort to obfuscate the source of the funds further, the narcotics proceeds are sometimes deposited into and transferred through other bank accounts before ultimately being credited to the accounts held by the exporter or retailer.

19. Once the narcotics proceeds are in accounts held by the exporter or retailer, they can then be used to satisfy debts owed to the exporter or retailer from businesses in South America or can be forwarded to other entities in a further attempt to launder the funds by placing additional financial transactions between the sale of narcotics and the ultimate destination of the funds.

The Seized Accounts Ending in 3284 and 9959

20. The Defendant Funds were seized from Citibank accounts held in the name of a business named Justek USA Corp. ("Justek"), which purports to be a wholesale electronics distributer located in Miami, Florida. The signatory for both of the seized accounts is also listed as the registered agent for Justek (hereinafter referred to as the "Justek Agent." According to official government records, the Justek Agent is a lawful permanent resident of the United States who is originally from Nicaragua. Records also show that the Justek Agent travels frequently to Nicaragua and other South American countries.

21. A review of the bank records for the Seized Accounts reveal a pattern of structuring and money laundering. Specifically, numerous and regular cash deposits were made into the Seized Accounts in several different geographical areas, including within the Eastern District of New York, and those deposits appear to have been structured to avoid the reporting requirements. On or about and between October 28, 2013 and September 17, 2014, these geographically disparate deposits into the Seized Accounts totaled approximately $311,805, which includes $200,470 deposited into the seized account ending in 3284 and $111,335 deposited into the seized account ending in 9959. While there was no single deposit that exceeded $10,000 into either of the Seized Accounts, there were numerous instances where deposits made into both seized accounts on the same day, or on consecutive business days, aggregated to amounts close to or in excess of $10,000. Additionally, many of the cash deposits were conducted in the same city on the same day, but were conducted at a different Citibank branch. A sample of the deposit activity is set forth below.

| Account | Date | Amount | Location |
|---|---|---|---|
| 3284 | 10/28/13 | $7,160.00 | 401 West 42nd Street NY, NY |
| 3284 | 10/28/13 | $8,000.00 | 145 East 42nd Street NY, NY |
| 3284 | 11/4/13 | $4,000.00 | 238 North Avenue New Rochelle, NY |
| 3284 | 2/19/14 | $6,000.00 | 704 Allerton Avenue Bronx, NY |
| 3284 | 2/19/14 | $7,000.00 | 201 West 125th Street NY, NY |
| 3284 | 2/20/14 | $5,000.00 | 25 E. Campbell Street Arlington, IL |
| 3284 | 2/28/14 | $6,000.00 | 2801 West Devon Ave. Chicago, IL |
| 3284 | 3/3/14 | $6,000.00 | 2481 Creston Ave. Bronx, NY |
| 3284 | 3/12/14 | $9,500.00 | 704 Allerton Ave. Bronx, NY |
| 9959 | 3/12/14 | $9,000.00 | 2481 Creston Ave. Bronx, NY |
| 3284 | 3/19/14 | $6,000.00 | 3605 Central Ave. Riverside, CA |

| | | | |
|---|---|---|---|
| 3284 | 3/19/14 | $6,000.00 | 14808 Pipline Ave. Chino Hills, CA |
| 9959 | 3/19/14 | $6,800.00 | 405 W Foothill Blvd. Claremont, CA |
| 9959 | 3/19/14 | $8,000.00 | 5677 La Palma Ave. Anaheim, CA |
| 9959 | 3/20/14 | $8,000.00 | 198 West Lincoln Ave. Anaheim, CA |
| 3284 | 3/21/14 | $8,000.00 | 4050 W. Metropolitan Drive Orange, CA |
| 3284 | 3/24/14 | $5,800.00 | 5660 Broadway Bronx, NY |
| 9959 | 3/25/14 | $4,000.00 | 14808 Pipline Ave. Chino Hills, CA |
| 3284 | 3/26/14 | $3,800.00 | 2350 Broadway NY, NY |
| 3284 | 3/31/14 | $6,500.00 | 8400 West Dempster Niles, IL |
| 9959 | 3/31/14 | $5,000.00 | 1525 Elinwood Avenue Des Plaines, IL |
| 3284 | 4/25/14 | $7,050.00 | 87-11 Queens Blvd Elmhurst, NY |
| 3284 | 5/6/14 | $5,460.00 | 1748 Broadway NY, NY |
| 3284 | 5/8/14 | $6,500.00 | 51-31 Northern Blvd Woodside, NY |
| 3284 | 5/9/14 | $8,570.00 | 51-31 Northern Blvd Woodside NY |
| 3284 | 5/12/14 | $9,850.00 | 51-31 Northern Blvd Woodside, NY |
| 3284 | 5/15/14 | $6,000.00 | 51-31 Northern Blvd Woodside, NY |
| 3284 | 5/15/14 | $5,580.00 | 51-31 Northern Blvd Woodside, NY |
| 3284 | 5/21/14 | $6,000.00 | 51-31 Northern Blvd Woodside, NY |
| 3284 | 5/23/14 | $3,000.00 | 51-31 Northern Blvd Woodside, NY |
| 3284 | 5/23/14 | $1,650.00 | 80-19 Roosevelt Ave. Jackson Heights, NY |
| 3284 | 5/23/14 | $5,260.00 | 37-57 74th Street Jackson Heights, NY |
| 3284 | 5/29/14 | $6,000.00 | 51-31 Northern Blvd Woodside, NY |
| 9959 | 5/30/14 | $4,500.00 | 37-57 74th Street Jackson Heights, NY |
| 9959 | 6/5/14 | $5,960.00 | 37-57 74th Street Jackson Heights, NY |
| 9959 | 6/5/14 | $6,000.00 | 80-19 Roosevelt Ave. Jackson Heights, NY |
| 9959 | 6/5/14 | $4,500.00 | 51-31 Northern Blvd Woodside, NY |
| 3284 | 6/9/14 | $4,790.00 | 770 Rte 22 North Plainfield, NJ |
| 9959 | 6/12/14 | $9,000.00 | 51-31 Northern Blvd Woodside, NY |
| 9959 | 6/19/14 | $4,000.00 | 1828 N. Arlington Hts Rd, Arlington Hts, IL |
| 9959 | 6/19/14 | $4,000.00 | 136A N. York Street Elmhurst, IL |
| 9959 | 6/20/14 | $6,000.00 | 2801 West Devon Avenue Chicago, IL |
| 9959 | 6/25/14 | $4,075.00 | 25 E Campbell Street Arlington, IL |
| 9959 | 6/25/14 | $5,000.00 | 1525 Elinwood Avenue Des Plaines, IL |

| | | | |
|---|---|---|---|
| 9959 | 6/25/14 | $4,200.00 | **25 E Campbell Street Arlington, IL** |
| 9959 | 7/3/14 | $4,300.00 | 1525 Elinwood Avenue Des Plaines, IL |
| 9959 | 7/9/14 | $9,000.00 | 800 North Hill Street Los Angeles, CA |
| 3284 | 8/20/14 | $8,000.00 | 800 North Hill Street Los Angeles, CA |
| 3284 | 9/2/14 | $4,900.00 | **800 S. Barrington Road Streamwood, IL** |
| 3284 | 9/2/14 | $2,600.00 | **6222 Kedzie Avenue Chicago, IL** |
| 3284 | 9/3/14 | $4,500.00 | **25 E Campbell Street Arlington, IL** |
| 3284 | 9/5/14 | $5,000.00 | 136A North York Street Elmhurst, IL |
| 3284 | 9/17/14 | $2,500.00 | **1210 Main Street Lombard, IL** |
| 3284 | 9/17/14 | $2,500.00 | **1195 Agden avenue Naperville, IL** |

22. As noted above, the bank deposit activity occurred at Citibank branches located in various cities in New York, New Jersey, California and Illinois. However, there is no indication that Justek maintains any business locations or agents in any of those locations or anywhere outside of Florida.

23. As discussed above, pursuant to 31 U.S.C. § 5331 and related regulations, any trade or business that receives more than $10,000 in one or more related transactions is required to file a form 8300 with FinCEN. However, despite the extensive cash deposit activity described above, Justek has never filed any Form 8300s with FinCEN. Many individuals involved in illegal activities, such as tax evasion, money laundering, and narcotics trafficking, are aware of the reporting requirements and take active steps to cause financial institutions to fail to file CTRs in order to avoid detection of the movement of large amounts of cash. Among these is the process of "structuring," which involves making multiple cash deposits or withdrawals in amounts of $10,000 or less on the same day or consecutive days in order to avoid the filing of CTRs. Structuring transactions to avoid the filing of a CTR is prohibited by 31 U.S.C. § 5324(a)(3).

24. A review of bank deposits slips for the seized accounts reveals multiple examples of different handwriting, indicating that more than one individual made the deposits into the Seized Accounts.

25. A review of wire activity reveals that the Seized Accounts received approximately $80,000 in incoming wire transfers from Colombia. However, a review of export data maintained by the Department of Homeland Security reveals that during the same time period Justek declared exports to Colombia greatly exceeding $80,000. In addition, a portion of the structured deposits discussed above purported to be payment for goods shipped to Colombia, which is a source country for narcotics and a location known to use the BMPE and other forms of trade based money laundering.

26. On December 10, 2014, United States Magistrate Judge, for the District of New Jersey issued a seizure warrant for the Defendant Funds finding probable cause to believe that the Defendant Funds were subject to seizure and forfeiture as property involved in violations of 18 U.S.C. §§ 1956 or 1957, or property traceable to such property, and/or 21 U.S.C. § 881, as funds traceable to the sale of narcotics.

27. By letters dated January 29, 2015 and February 19, 2015, Justek USA Corp. was notified by the United States Department of Homeland Security, Customs and Border Protection ("CBP") that the Defendant Funds had been seized.

28. On March 31, 2015, CBP received a written request from Justek USA Corp. representative, Jorge Kruger, asking that this case be referred for judicial proceedings.

## FIRST CLAIM FOR RELIEF
### (Property Involved in Money Laundering)

29. Plaintiff repeats the allegations of paragraphs 1 through 28 as if fully set forth herein.

30. The Defendant Funds constitute property involved in money laundering, a violation of 18 U.S.C. §§ 1956 or 1957.

31. As such, the Defendant Funds are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SECOND CLAIM FOR RELIEF
### (Property Traceable to Sale of Controlled Substance)

32. Plaintiff repeats the allegations of paragraphs 1 through 28 as if fully set forth herein.

33. The Defendant Funds constitute money, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance, or proceeds traceable to such an exchange, or money used or intended to be used to facilitate a violation of Title 21 of the United States Code.

34. As such, the Defendant Funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## THIRD CLAIM FOR RELIEF
### (Property Traceable to Structured Transactions to Avoid Reporting Requirements)

35. Plaintiff repeats the allegations of paragraphs 1 through 28 as if fully set forth herein.

36. The defendant property, and all property traceable thereto, was involved in or is traceable to transactions or attempted transactions that were structured with the intent to avoid transaction reporting requirements under federal law in violation of 31 U.S.C. § 5324.

37. As such, the Defendant Funds are subject to forfeiture to the United States pursuant to 31 U.S.C. § 5317(c).

WHEREFORE, Plaintiff requests that a warrant of this Court be issued for the arrest of the Defendant Funds; that notice of these proceedings be given to all interested persons; that the Defendant Funds be forfeited and condemned to the use of the United States of America; that the Plaintiff be awarded its costs and disbursements in this action and for such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
June 29, 2015

KELLY T. CURRIE
ACTING UNITED STATES ATTORNEY
Attorney for Plaintiff
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By: *Tanisha Payne*
Tanisha R. Payne
Assistant United States Attorney
(718) 254-6358

## **VERIFICATION**

1. I am a Special Agent with the Department of Homeland Security ("DHS") and, as such, have knowledge of the facts underlying this action.

2. I have read the within verified complaint in rem and know the contents thereof.

3. The matters contained in the within verified complaint in rem are true and accurate to the best of my knowledge, information and belief.

4. The source of my information and the grounds for my belief are my personal knowledge, information provided by other law enforcement officers, and the official files and records of the DHS and other law enforcement agencies.

I declare under penalty of perjury that the foregoing is true, to the best of my knowledge, information, and belief.

Dated: Brooklyn, New York
June 29, 2015

Anthony P. Caramanica
Special Agent
Department of Homeland Security